UNITED STATES *v.* WASHBURN-CROSBY Co. (No. 2750)[1]

1. EVIDENCE, CONFLICTING—PRESUMPTION FAVORING COURT BELOW.
    Where the evidence was conflicting, the resolution by the court below of such conflict is accepted in this court.
2. COMMINGLING OF GOODS—SEGREGATION—WHEAT AND SCREENINGS.
    Section 507, Tariff Act of 1922, provides that, when goods are so mixed that customs officers can not readily determine the amount of each kind, the

importer shall separate them within ten days or pay duty on all at the highest rate applicable to any. Where it was shown that simple and well accredited tests determined the amounts of wheat and screenings in a mixed lot, such tests should have been accepted; and the *onus* of separation did not rest upon the importer.

## United States Court of Customs Appeals, November 19, 1926

APPEAL from Board of United States General Appraisers, Abstract 51007

[Affirmed.]

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

*Frank P. Wilson* (*Bert Hanson* and *George G. Davidson, jr.*, of counsel), for appellee.

[Oral argument October 8, 1926, by Mr. Lawrence and Mr. Hanson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported from Canada on February 2, 1923, a quantity of wheat in bulk, which it entered as 107,248 bushels of wheat, under paragraph 729 of the Tariff Act of 1922, and 3,302 bushels of screenings, under paragraph 731 of said act. It is contended by the appellant, and conceded by appellee, that the wheat and screenings were mingled at the time of exportation, within the meaning of section 507 of the Tariff Act of 1922, which is as follows:

SEC. 507. COMMINGLING OF GOODS.—Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision, within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

The wheat and screenings were not segregated by the importer at its own risk and expense under customs supervision within ten days after entry thereof, and the collector thereupon classified the entire importation for duty as 110,550 bushels of wheat, at 30 cents per bushel, under said paragraph 729. The importer protested, claiming the goods imported should have been classified as entered, and, upon a hearing before the court below, its protest was, in effect, sustained, the judgment being that 2.7 per centum of the imported goods be classified for duty as screenings under said paragraph 731 and the balance thereof be classified as wheat under said paragraph 729, and a reliquidation was ordered accordingly. From that judgment, the Government appeals.

Paragraphs 729 and 731, hereinbefore referred to, are as follows:

729. Wheat, 30 cents per bushel of sixty pounds; wheat flour, semolina, crushed or cracked wheat, and similar wheat products not specially provided for, 78 cents per one hundred pounds.

731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 10 per centum ad valorem: *Provided*, That when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate.

It is contended and argued by the Government that when the appellee imported two commingled dutiable commodities, screenings and wheat, said section 507 imposed the mandatory duty upon it to segregate its importation into its constituent elements for duty purposes, within the period and in the manner, fixed by that section, and that, having failed to do so, it must pay the higher rate upon the whole importation.

It is obvious, upon an inspection of said section 507, that counsel for appellant have misapprehended the scope and effect of said section. Section 507 only calls for the imposition of the higher rate when "the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers." Therefore, as a necessary preliminary to the imposition of such higher rate, the inquiry in this case must be: Could the quantity or value of the wheat and screenings in this importation have been readily ascertained by the customs officers, at the time of importation? If so, it ought to have been ascertained and duty separately assessed; if not, the higher rate was authorized and required by the law.

We are not left in doubt, on this point, by the record. Gerald D. Kennedy, an inspector of grain for appellee for 10 years, took samples from each 300 bushels of the grain as it came from the ship, passed it over a device called a "kicker," which separates the wheat from the screenings, and from this comparatively simple operation was able to deduce and testified that 97.3 per centum of the importation was wheat and 2.7 per centum screenings. Mr. Patrick D. Connors, chief grain inspector and weighmaster of the Buffalo Corn Exchange, a licensed inspector acting under the authority and supervision of the Department of Agriculture of the Government, inspected 11 samples taken from this importation. The testimony shows that these samples were taken from each 300-bushel draft as it came from the ship to the elevator, by means of a probe or tube, but whether they were composite samples or not does not appear. This probe is a hollow brass tube, having compartments at each 6 inches of its length. The probe was plunged into the grain until it reached the bottom; the compartments were then opened by means of a device at the top of the tube and grain was allowed to flow into each compartment, the compartments then being closed as they were opened,

and the tube was then withdrawn. In this way a sample was obtained from each 6 inches in depth of the amount sampled. From the composite samples thus obtained the final computation of wheat and screenings was obtained by the witness Connors; he testified that the amount of dockage or screenings so found by him was 2.3 per centum. That the operation is a comparatively simple one is apparent in view of the testimony of Conners that on some days as many as 50 samples are taken and examined. That the results obtained are approximately correct must be assumed in view of the fact that the Department of Agriculture has approved and adopted this process. There is an apparent discrepancy between the results arrived at by the witness Kennedy and the witness Connors. The court below heard the witnesses testify and concluded that the approximate amount of screenings, as shown by the evidence, was 2.7 per centum. We shall not disturb this finding of fact in view of the somewhat conflicting testimony relative thereto.

The Treasury Department has also, on several occasions, assumed that the quantities of similar commingled dutiable products might be readily ascertained. In T. D. 31177, 20 Treas. Dec. 5, the department, under date of January 7, 1911, directed the collector of customs at St. Paul to determine and separately assess for duty screenings and flaxseed which had been imported commingled. Again, in T. D. 34537, 26 Treas. Dec. 960, the collector of customs at Duluth was instructed to assess duty separately on screenings and flaxseed imported commingled, "if the proportion of each can be determined and the screenings are of commercial value." There the screenings were to be assessed separately only when of commercial value; in the case before us, Congress has expressly provided in paragraph 731 that screenings shall be dutiable, thus obviating any necessity of an inquiry as to their commercial value. To a similar effect is T. D. 37187, 32 Treas. Dec. 531. The only pertinent inquiry in such cases is whether the material is screenings, as provided in said paragraph 731, and not merely impurities, such as is provided for in section 506 of the Tariff Act of 1922. As a matter of fact, it was not seriously contended by the Government that there was any difficulty in ascertaining the dutiable quantities of screenings and wheat in this importation. This is evident from the following colloquy between counsel, appearing in the record:

Mr. DAVIDSON. I want to show that the content of screenings can be readily ascertained.

General Appraiser McCLELLAND. I think you have shown that by the actual test of the sample that came out of this shipment.

Mr. RICHARDSON. There is not any denial on the part of the Government that it is not perfectly possible to have a segregation of the wheat screenings. In fact, we claim that the importer must within 10 days make that separation. There was never any separation here. If the importer separates the wheat from the screenings it is dutiable at the rate specified.

We are convinced, from an examination of the record in the case at bar, that the respective amounts of screenings and wheat in the importation in question here were readily ascertainable by the customs officers. This being true, it was the duty of the customs officers to so ascertain them and return the goods for duty accordingly. Not having done so, the court below was right, upon this record, in rendering judgment ordering a reliquidation, and its judgment is therefore *affirmed*.