(C. D. 1028)

Perry Ryer & Co. *v.* United States

United States Customs Court, First Division

(Decided October 16, 1946)

*Benjamin A. Levett* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott* and *Richard F. Weeks*, special attorneys), for the defendant.

Before Oliver, Cole, and Mollison, Judges

Cole, Judge: The Beadenkopf Leather Co., Inc., imported from Argentina four shipments of Pampa goatskins in their natural state,

i. e., raw, with hair on. "Pampa" is the name given to the common goat of the Argentine and also applies to the goat, hereinafter referred to as the "hybrid animal," containing blood of the Angora goat due to interbreeding of the Angora goat with the common goat. The Pampa goat is of medium size with essentially white hair of ordinary length. The hair is removed from the skins, and after being washed and dried, is baled and sold to wool-carpet dealers for use in the manufacture of such carpets. The skins are tanned, colored, and finished, and ultimately sold to the shoe-manufacturing trade.

Plaintiff, a firm of customs brokers, entered the merchandise as being entitled to free entry under paragraph 1765 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1201, par. 1765), which provides for "Skins of all kinds, raw, and hides not specially provided for."

In each of the four entries under consideration, one or more bales was examined and found by the customs officials to contain skins of the common goat and skins of the hybrid animal. In other words, the examined bales showed two kinds of goatskins, each subject to a different tariff classification. There is no dispute between the parties that the skins of the common goat are entitled to free entry under paragraph 1765, *supra*, and that the hair on the skins of the hybrid animal, conceded for the purposes of this case to be hair of the Angora goat, is dutiable on the basis of clean content under the provision in paragraph 1102 (b) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1102 (b)) for "Wools, not specially provided for, and hair of the Angora goat * * * on the skin, 32 cents per pound of clean content."

Although the protest claims that "the goods in question are properly non-dutiable under the Act of June 17, 1930, under Par. 1688 or 1765 thereof," the question presented is primarily not a matter of classification but rather one of administrative practice for plaintiff's complaint is largely, if not entirely, against the procedure followed by the customs officials in their ascertainment and assessment of duty, bringing thereby section 508, *infra*, importantly into this decision.

Pertinent information concerning the four shipments in question is set forth in the following tabulation:

| Entry Number | Date of entry | Number of bales | Total weight | Examined bale | Weight of hybrid skins | Percent of dutiable hair |
|---|---|---|---|---|---|---|
| 319263 | 10/15/41 | 30 | 28, 572 | 8078 | 167 lbs. | 4. 5 |
| 320506 | 10/22/41 | 30 | 28, 573 | 8146 | 194 lbs. | |
| | | | | 8151 | 183 lbs. | 4. 8 |
| | | | | 8158 | 174 lbs. | |
| 322964 | 11/5/41 | 20 | 25, 817 | 8182 | 193 lbs. | 5. 06 |
| 323667 | 11/7/41 | 36 | 34, 286 | 8224 | 183 lbs. | 4. 8 |

In addition to Horace K. Dugdale, president of the importing corporation, plaintiff also called as witnesses, the examiner, an assistant

appraiser, and the chief liquidator, all customs officials at the port of New York where the importations in question were entered. Because their testimony relating to examination of the instant merchandise and liquidation of the entries is wholly undisputed, reference thereto will be made as occasion arises throughout the discussion herein in lieu of a detailed review. The official papers, including the "four entries and the accompanying papers" (R. 19), were admitted in evidence upon motion of plaintiff, but would have been considered where necessary without that formality.

Following examination of bale 8078 in the first importation, the customs examiner made the following notation on the invoice:

This bale was segregated by this office and found to contain 463 skins of which 77 skins were taken from a "hybrid animal" Angora & common goat. The balance were from the common goat. *Estimated clean content of hair of the hybrid goat is 4½% of the net weight (167 lbs.=77 skins) @ 32¢ per lb., par. 1102–B. Balance of weight free, par. 1765, c/c 4½% of the net landed weight.* Bales believed to be uniformly packed.

Later, and under date of December 1, 1941, the italicized part of the above quotation was stricken by the customs examiner with approval of the assistant appraiser who explained the action as follows (R. 31):

The question as to whether the contents of these bales were uniformly packed— that issue was raised at the time, and having not only these shipments that are under protest today but also other shipments that came in, we found that the contents of the bales were not uniformly packed. So that by an examination of the dutiable skins in one bale, that could not be applied to the balance of the bales.

Subsequent testimony by the customs examiner disclosed that the change in his advisory report, as hereinabove set forth, was made under an order from the Bureau of Customs to the effect that imported Pampa goatskins were subject to the provisions of section 508 of the Tariff Act of 1930, reading as follows:

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

Said order is based on the determination that section 508, *supra*, is applicable. Accordingly, the collector imposed duty under paragraph 1102 (b), *supra*, the assessment being applied on a clean content of 25 per centum of the total weight of the unexamined bale, plus the number of pounds found to be dutiable skins in the examined bale, bale 8078.

The three subsequent shipments arrived between the date of the original examination of the first importation and the time it was finally decided to invoke the provisions of section 508, *supra*. Segregation of the examined bales in these later shipments was made by the said president of the importing corporation, whose presence at the official examination is explained in the following excerpt from the testimony of the customs examiner:

Q. Now, Mr. Dugdale has testified as to being up at the Appraiser's Stores to assist in separating—segregating several bales; do you recall the circumstances?—A. I do; yes.

Q. Will you state just what his functions were in this examination?—A. I don't know just who instructed him or gave him permission to segregate, but he came to my office and asked could he do so. There were so many bales on the floor so I said "All right." So he and I went out to the floor and he asked me which was one skin and which was the other, so I showed him.

Q. It was all done under your supervision?—A. Well, it wasn't constantly under my supervision.

Q. You made the return then, of course, on the basis of the segregation?—A. That is right.

Q. That is as to the clean content of the hybrid hair?—A. Of the Angora skins, yes.

The appraiser's report in each of the last three shipments is substantially the same. The one made in connection with the second shipment, entry 320506, is quoted:

This officer is unable to definitely state whether the bales in question are uniformly packed, since the three bales examined, were not so packed, as they contained different amounts of dutiable skins. However, the importer claims that the bales are uniformly packed.

In assessing duty on these later shipments, the collector invoked the provisions of section 508, *supra*, but, in so doing, he departed from his action taken in the first shipment and applied duty in each instance under paragraph 1102 (b), *supra*, on a clean content of 25 per centum of the weight of the entire shipment, without giving any consideration to the examined or segregated bale or bales, showing the actual amount of dutiable skins contained therein.

We have outlined in detail the action of the respective customs officials because the shipments under consideration presented a new problem. The earliest of the importations in question was the first of its kind, and final liquidation of the entry was, in effect, the institution of a new procedure.

Plaintiff's principal claim is to the effect that section 508, *supra*, is not applicable, that the examined bale or bales should be accepted as representative of the respective importation, and that the amount of dutiable skins in each shipment should be based upon the percentage found in the examined bale or bales, as hereinabove set forth, with

duty assessed accordingly under paragraph 1102 (b), *supra*, on a clean content of 25 per centum. The issue is stated in counsel's brief as follows:

From the importer's point of view, and we submit it is the correct point of view, actually the only issue in this case is whether the uniform practice which has existed from the beginning of government of examining representative packages selected by the collector and assessing the entire shipment on the basis of such examination, is to be set aside to the extent that the appraiser or the collector, without examining other than the packages selected by the collector, and without requesting the return of any other packages for examination, may arbitrarily decide that the packages the collector selected as representative are *in fact not representative* and that his report should be disregarded even as to the package examined and segregated.

In pressing this claim, plaintiff cites as authority section 499 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. § 1499), which states, in part, that:

\* \* \* The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation or instruction, the application of which may be restricted to one or more individual ports or to one or more importations or one or more classes of merchandise, permit a less number of packages to be examined. All such special regulations or instructions shall be published in the weekly Treasury Decisions within fifteen days after issuance and before the liquidation of any entries affected thereby. The collector or the appraiser *may require such additional packages or quantities as either of them may deem necessary.*

To support this contention, plaintiff emphasizes the customs examiner's testimony to the effect that in examining wool, the provisions of said amended section 499 are followed, and that determination of the clean content of an entire shipment is ordinarily based upon an examination of bales designated pursuant to section 499, as amended, *supra*.

The practicability of such procedure is easily discernible for only one type or kind of merchandise is involved. It is true that different factors, i. e., "Weight, character of the fiber, length of the fiber, diameter of the fiber" (R. 50), must be considered in finding clean content, but the merchandise is uniform in character, subject to one tariff classification. That condition is not true as to the instant importations. Here, two separate and distinct commodities, for tariff purposes, are contained in each of the imported bales; one, common goat skins, free of duty; and the other, Angora goat hair, subject to

a specific rate of duty. Under such circumstances section 499, *supra*, has no application.

Counsel for plaintiff, in his brief, urges very strongly that the shipments in question are uniform, and therefore the examined bales should be accepted as representative of the importations. In this connection, he points to the statement "Bales believed to be uniformly packed," which was never deleted from the original report of the appraiser submitted in the first importation. It is argued that this admission by customs officials proves the soundness of plaintiff's claim concerning uniformity. The assistant appraiser testified that the statement just quoted refers only to the "manner of packing, but not as to the contents," although later the same witness stated in effect that the reference to lack of uniformity of the bales meant that "The quantities of the dutiable skins differed in addition to the quantity of skins in each bale which differed." The action of the collector, invoking section 508, *supra*, removes any doubt that may arise from the contradictory statements. Plaintiff also calls attention to the percentage of dutiable hair found in the examined bales, as set forth in the above tabulation, stating that "greater uniformity was hardly to be expected."

The degree of uniformity suggested by plaintiff, with consequent application favorable to the claim, cannot be invoked in this case. The collector found the importations to consist of commingled merchandise and assessed duty accordingly. The proof introduced by plaintiff is not sufficient to disturb the collector's action. On the contrary, the record tends to support the official findings.

Having found that section 508, *supra*, is applicable, the question thus presented is whether the merchandise is "readily" segregable. If so, the burden is upon customs officials to separate the two commodities; otherwise, the onus rests with the importer. On this point, plaintiff contends that the action of the examiner, who actually segregated in one hour and a quarter the one bale examined in the first importation, is conclusive that each class of the imported merchandise can be "readily ascertained by the customs officers." It should be borne in mind, as hereinabove stated, that the earliest of these importations presented an entirely new question and that at the time of the original examination, the procedure, ultimately adopted, had not become effective. An appraiser's report, made under such circumstances, does not warrant the controlling influence urged by plaintiff.

*United States* v. *Brandenstein*, 17 C. C. P. A. 480, T. D. 43941, and *United States* v. *Washburn-Crosby Co.*, 14 Ct. Cust. Appls. 243, T. D. 41874, are cited by plaintiff to support the proposition that the present merchandise is readily segregable. The *Bradenstein* case

involved broken rice and milled rice; the *Washburn* case related to wheat and screenings. In each instance it was shown that segregation of such merchandise was accomplished by well-recognized and accredited tests that were actually available to the customs officials. No comparable procedure has been shown to prevail concerning the instant merchandise.

*United States* v. *Bond*, 161 Fed. Rep. 165, T. D. 28853, is mentioned as being "particularly applicable" to the situation before us. There, the merchandise consisted of a mixture of bituminous coal and slack, in the proportion of about two to one. The appraiser reported that he "took a fair representative sample of 113 pounds, used a half-inch screen, and with the following result: Slack, 40½ pounds, 0.35841 per cent; Lump, 72½ pounds, 0.64159 per cent." This official report formed the basis for the court's conclusion that there "appears to be no difficulty upon the part of those charged with the assessment and collection of the duty in ascertaining the proportion which the slack bears to the lump, the part to the whole." The cited case is distinguishable from the present one both from a factual and a legal standpoint.

Plaintiff quotes at length from *United States* v. *E. E. Holler*, 28 C. C. P. A. 124, C. A. D. 133, which concerned importations of fish from Mexico which were entered at Nogales, Ariz. Some of the fish were caught from an American vessel and therefore entitled to free entry as "products of American fisheries," paragraph 1730 (a) of the Tariff Act of 1930. The remaining fish were caught from canoes owned by Mexican nationals and were carried to shore by the canoes. They were assessed at 1 cent per pound under paragraph 717 (a) of the Tariff Act of 1930 as fresh fish of the kind therein provided for. All of the fish were loaded into a truck together and imported in bulk without one class being separated from the other. The court found the importations to consist of commingled merchandise and therefore subject to the provisions of section 508, *supra*. After reviewing several early decisions involving segregation of imported commingled commodities, the court said that "in each instance where the importer was granted relief it was definitely held, in effect, that the customs officers would have been able from the *per se* character of the merchandise, without extrinsic aid, to readily ascertain the quantity or value of the respective classes of commingled goods where such classes were subject to different duty treatments." Based upon a finding that "the customs officials were unable 'readily' to ascertain the segregable classes by an inspection of the merchandise," it was held, in accordance with the provisions of said section 508, that all of the merchandise was dutiable under paragraph 717 (a), *supra*, as classified by the collector. There is nothing about the *Holler* case,

*supra,* to support plaintiff's present position. · On the contrary, it is in line with the principle followed by defendant, for it is cited with approval in *S. Schapiro & Sons v. United States,* 29 C. C. P. A. 235, C. A. D. 196, which is directly in point.

· In the *Schapiro* case, *supra,* the merchandise was invoiced as "Bleached White Wipers," consisting in part of wiping rags, dutiable at 3 cents per pound under paragraph 922 of the Tariff Act of 1930, and in part of rags used chiefly for paper making, entitled to free entry under the provision in paragraph 1750 of the Tariff Act of 1930, for "paper stock, crude, of every description." To determine the respective proportion of each class, it was necessary to open the bales and bundles and sort the rags by hand. In holding the matter of segregation to be the importer's responsibility and not that of the customs officials, the court said:

* * * It was necessary in this case, in order accurately to determine quantities, to open 500 bundles, sort the rags, separate the different classes by hand and weigh them. Only by this procedure could there have been a determination of the respective classes based upon size, absorbent qualities, condition, freedom from heavy patches, holes, etc.—factors which required consideration in determining what were paper-stock rags. That this procedure might have been followed by the customs officials may be conceded but we are unable to agree that it was the intent of Congress in enacting section 508, *supra,* to require that they do it. The primary interest in separating the paper-stock rags from the non-paper-stock rags was that of the importers, and the section defines the conditions under which such separation could have been made by them. We are of opinion that under any fair interpretation of the section the burden rested upon the importers rather than upon the collector.

The shipments under consideration aggregate 116 bales, totaling 117,248 pounds. Here, as in the said *Schapiro* case, it is necessary to open each of the bales and physically separate the two classes of imported skins. The primary interest in such segregation is obviously with the importer. The present situation parallels that considered by the court in the cited case. Consequently, the foregoing quotation applies with the same force and effect here as it did there. Accordingly, we hold the provisions of section 508, *supra,* to be applicable to the instant merchandise, that the quantity of each class of these Pampa goatskins is not readily ascertainable by the customs officers, and that the burden of segregation is upon the importer.

The official papers, as hereinabove noted, reveal an inconsistency in that the credit allowed in the first shipment was not also given to the importer for the examined bales in the last three shipments which were segregated by the president of the importing corporation under customs supervision. · There is nothing herein explaining this attitude by the customs officials, and the failure to give proper recognition to the condition has resulted in an erroneous assessment of duty on

merchandise admittedly entitled to free entry. Plaintiff is entitled to relief in the amount of the nondutiable skins contained in the examined bales included in the second, third, and fourth shipments under consideration.

The proof before us, however, does not show the total weight of each of the segregated bales in the three later shipments. Plaintiff introduced evidence establishing the number of skins in each of said bales and the quantity of dutiable skins, but offered nothing upon which we can even calculate the total weight of the individually segregated bales. In the absence of such proof, we are unable to make a definite finding concerning the exact quantity and weight of skins entitled to free entry under paragraph 1765, *supra*. Under the circumstances, we are constrained to overrule the protest in its entirety.

Judgment will be entered accordingly.