PERRY, RYER & COMPANY *v.* UNITED STATES (No. 4565)[1]

[1] C. A. D. 367.

United States Court of Customs and Patent Appeals, May 20, 1947

*B. A. Levett* for appellant.

*Paul P. Rao,* Assistant Attorney General (*Sybil Phillips* and *Richard F. Weeks,* special attorneys, of counsel), for the United States.

[Oral argument April 1, 1947, by Mr. Levett and Miss Phillips]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1028, sustaining the action of the Collector of Customs at the port of New York who classified four respective shipments of goatskins imported from the Argentine as wool on skins of common goat and hybrid goat commingled in the same bale under paragraph 1102 (b) of the Tariff Act of 1930 and assessed a duty thereon of 32 cents per pound of clean content, and overruling the protest of appellant claiming that the merchandise was nondutiable under paragraphs 1688 or 1765 of the same act.

The statutory provisions of the Tariff Act of 1930 here involved, so far as pertinent, read as follows:

PAR. 1102. (b) Wools, not specially provided for, and hair of the Angora goat, * * * on the skin, 32 cents per pound of clean content * * *.

PAR. 1688. Hair of horse, cattle, and other animals, cleaned or uncleaned, drawn or undrawn, but unmanufactured, not specially provided for.

PAR. 1765. Skins of all kinds, raw, and hides not specially provided for.

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

Section 499 as amended by the Customs Administrative Act of 1938 (U. S. C., title 19, sec. 1499):

* * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation or instruction, the application of which may be restricted to one or more individual ports or to one or more importations or one or more classes of merchandise, permit a less number of packages to be examined. All such special regulations or instructions shall be published in the weekly Treasury Decisions within fifteen days after issuance and before the liquidation of any entries affected thereby. The collector or the appraiser may require such additional packages or quantities as either of them may deem necessary. * * *

The court below held that section 508, *supra*, was applicable to the shipments here involved which holding is claimed by appellant to be erroneous on the ground that the quantity of each class of skins contained in the unexamined packages of the respective shipments could be readily ascertained, and that the collector having designated certain bales covered by the involved entries to be examined for the purpose of appraisement or otherwise, as provided for in section 499, *supra*, was bound not only as to the examined bales but also as to the unexamined bales by the description of the merchandise reported to him by the appraiser as the result of his examination of the designated bales.

There were four entries of the merchandise covered by appellant's protest and there is no dispute that each entry included two kinds of "Pampa" goatskins: (1) that of the common goat of the Argentine, entitled to free entry under paragraph 1765, *supra;* and (2) that of the common goat cross-bred with the Angora, dutiable as hair of the Angora goat on the skin at 32 cents per pound of clean content under paragraph 1102 (b), *supra.*

The record discloses that the hair on the two kinds of goatskins hereinbefore described is removed, cleaned, and baled and then sold to a manufacturer for use in the production of wool carpets. The skins themselves are processed and sold for use as leather in the manufacture of shoes.

In the first entry, 319263, imported on October 15, 1941, there were 30 bales, one of which was segregated and examined by customs officials. The examiner's report showed that the bale contained 463 skins, 77 of which were taken from the hybrid goat and had a clean content of 25 per centum of hair of the Angora. The balance of the skins were taken from the common goat of the Argentine.

In the second entry, 320506, three bales were examined and it was found that each such bale contained a different amount of dutiable skins; namely, 74, 65, and 75. In the third entry, 322964, one examined bale showed 72 Angora skins; and in the fourth, 72 Angora skins were disclosed in the one bale that was examined.

The estimated clean content of dutiable hair found upon examination of the six bales of the four entries, as shown by the tabulation of percentages of the court below, was, respectively, 4.5%, 4.8%, 5.06%, and 4.8% of the total weight of the bales.

Following his examination of the bale covered by the first entry, the examiner made a memorandum on the invoice of purchase in which he stated, among other things, that he believed that the bales covered by the entry "to be uniformly packed." When the second entry came before him, however, the examiner after completing the examination of the three designated bales, made another memorandum in which he advised the collector, among other things, that he, the examiner, was unable to definitely state whether the bales covered by the second entry were uniformly packed since the three examined bales "contained different amounts of dutiable skins."

The record discloses that in liquidating the entry covering the first of the four shipments, the collector accepted the appraiser's report only as to the character and description of the merchandise and the advisory classification of the contents of the examined bale. The assessment, as pointed out by the court below, was applied on a clean content of 25 per centum of the number of pounds of dutiable hair of the Angora on the skins in the examined bale at the rate of 32 cents per pound under paragraph 1102 (b). The skins of the common goat contained in the examined bale were held by the collector to be entitled to free entry under paragraph 1765. The credit allowed to the importer for the quantity of skins of the common goat of the Argentine contained in the examined bale of the first shipment was not allowed, however, for the examined bales of the last three shipments.

Assuming that the unexamined bales contained the same two classes of merchandise as the examined bales, the collector assessed duty on the estimated clean content of 25 per centum of the total weight of all the skins in all the bales of the second, third, and fourth entries at the rate of 32 cents per pound applicable to the hair of the Angora goat. The collector likewise applied the same assessment of duty to the 29 unexamined bales of the first entry.

In taking such action the collector proceeded on the basis that the involved merchandise was so packed together or mingled that the quantity or value of each class of the merchandise contained in the imported bales could not be readily ascertained by the customs officers, and that the importer had not segregated the merchandise within 10 days after entry thereof in order to ascertain the quantity and value of each class as provided by section 508, *supra*.

Section 508 calls for the imposition of the higher rate of duty where the quantity or value of each class of mingled merchandise cannot be readily ascertained by the customs officers. It is therefore a necessary preliminary to the imposition of such higher rate to inquire if the respective quantities or value of such merchandise could have been readily ascertained by the customs officers at the time of importation. If so, it ought to have been ascertained and duty separately assessed. *United States* v. *Washburn-Crosby Co.*, 14 Ct. Cust. Appls. 243, 245, T. D. 41874.

It is well settled, of course, that importations enormous in bulk and number containing partly free and partly dutiable goods indiscriminately mingled together "and requiring an army of officials to separate them," are subject in their entirety to the highest rate of duty applicable to any part thereof. *United States* v. *Brewer et al.*, 92 Fed. 343. See also *S. Schapiro & Sons* v. *United States*, 29 C. C. P. A. (Customs) 235, C. A. D. 196.

Counsel for the Government argues that the difference between the two classes of the merchandise here involved was ascertainable; but not readily so. Referring to the record, he points out that it took the examiner an hour and a quarter to separate the different classes in but one bale, and there were 116 bales in the four shipments.

The examination of the six designated bales, according to the record, disclosed that such bales were uniform as to the manner of packing and that the amount of hair of the Angora per pound of clean content in each bale, namely 25 per centum, was readily ascertained.

The Government contends, however, that such examination established that the bales did not otherwise run uniformly in that they did not contain "even approximately" the same proportion of hybrid Angora skins, and therefore the examination of the six bales could not be applied as representative of the contents of the unexamined bales.

Appellant on the other hand urges that the examined bales actually show practical uniformity in their content of dutiable merchandise. Relying on the tabulation of the court hereinbefore described, appellant points out that of the established percentages of the four shipments—

Two were exactly the same, 4.8%, and the limit of variation in the percentage of dutiable hair was about one-half of one per cent of the total weight of the bale.

The average of the four shipments is 4.79% and the greatest variation from this average is twenty-nine hundredths of one per cent less, as to one shipment, one hundredth of one per cent less as to two shipments and twenty-seven hundredths of one per cent more as to the remaining shipment. Considering the nature of the merchandise, one could hardly expect greater uniformity.

It is true that it took the examiner an hour and a quarter in the instant case to examine the one designated bale of the first importation, but the record discloses, and the Government admits, that the examiner in that instance was not familiar with his assignment. In any event, the examiner could, and as a matter of fact did, readily determine the quantity of each class of merchandise packed in any of the bales he examined.

Accordingly, the only point before the court is whether the unexamined bales could likewise be readily segregated. The appraiser's report stated that he believed the bales of the first entry "to be uniformly packed" and his subsequent explanation as to what he meant by that statement must give way to the fact that both the examiner and the collector acted upon that report as to the percentage of the dutiable content of the hair of the Angora in all the examined and unexamined bales. Moreover, on the question of the uniformity of the dutiable contents of the imported bales, the figures hereinbefore set forth speak for themselves.

The Government contends and the trial court held that the *Schapiro* case, *supra*, controls the question here in issue. In that case this court in holding that the goods there involved were not readily ascertainable pointed out that—

It was necessary in this case, in order accurately to determine quantities, to open 500 bundles, sort the rags, separate the different classes by hand and weigh them. Only by this procedure could there have been a determination of the respective classes based upon size, absorbent qualities, condition, freedom from heavy patches, holes, etc.—factors which required consideration in determining what were paper-stock rags. * * *

It seems obvious in the instant case that there would be no difficulty on the part of customs officers to distinguish between the respective skins.

The imported merchandise in the *Schapiro* case was so packed that in order to determine the quantities of the respective classes thereof it was necessary to open 500 bundles because the result of an examination of any designated bundle or bundles could not be applied as representative of the contents of the unexamined bundles. This court is of the opinion therefore that the facts in the case at bar are readily distinguishable from the facts in the *Schapiro* case and that it is not a controlling authority herein.

Since it clearly appears that the two classes of merchandise here involved were readily ascertainable upon the examination of the designated bales, it follows that the collector's holding to the con-

trary was erroneous and therefore constituted no legal basis for his action in the assessment of duty upon the skins that were entitled to free entry under paragraph 1765, *supra*.

For the reasons stated, the judgment of the United States Customs Court is *reversed* and the cause is *remanded* for further proceedings consistent with the views herein expressed.